DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} Relator, Gene G. Felty, commenced this original action requesting a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate *Page 2 
its order denying his application for permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ. R. 53 and Section (M), Loc. R. 12 of the Tenth District Court of Appeals, this matter was referred to a magistrate who examined the evidence and issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission did not abuse its discretion in denying relator's PTD application and recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed objections to the magistrate's decision, rearguing the issues presented to and decided by the magistrate. For the reasons adequately stated in the magistrate's decision, we overrule relator's objections.
 {¶ 4} Following independent review, pursuant to Civ. R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, we hereby deny the requested writ.
Objections overruled; writ denied.
KLATT and TYACK, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 3 
 APPENDIX A MAGISTRATE`S DECISION IN MANDAMUS {¶ 5} Relator, Gene G. Felty, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total *Page 4 
disability ("PTD") compensation and ordering the commission to find that he is entitled to that compensation.
Findings of Fact: {¶ 6} 1. Relator sustained a work-related injury on February 3, 1997, and his workers' compensation claim has been allowed for the following conditions:
 Head laceration; severely lacerated and fractured left arm; contusions and abrasions to torso; fractured left leg/ankle; adjustment disorder with mixed emotional features; traumatic degenerative joint disease-tricompartmental left knee; dysthymic disorder.
 {¶ 7} 2. Relator filed his first application for PTD compensation in June 1999. At that time, his claim had not been allowed for the psychological condition of dysthymic disorder. Relator was 64 years old, had a high school education and specialized vocational training as a machine repairman. His work history involved employment as a maintenance mechanic. Further, relator indicated on his application that he was able to read, write, and perform basic math well. The commission relied upon medical reports finding that his physical conditions had reached maximum medical improvement ("MMI"), and that he was capable of performing employment activities which were sedentary to light in nature. The commission considered and relied on an employability assessment report prepared by John Finnegan who identified several jobs which relator could immediately perform. Mr. Finnegan also identified certain jobs which relator could perform following skill training. Mr. Finnegan concluded that relator's age of 64 years did not affect his ability to meet the basic demands of entry-level jobs, that his 12th
grade education and vocational training were positive factors enabling him to meet the basic demands of entry-level jobs, and that his prior work history provided him with transferable *Page 5 
skills which would assist him in meeting the basic demands of entry-level jobs. The Staff Hearing Officer ("SHO") provided the following analysis of the nonmedical disability factors:
 The Staff Hearing Officer finds that the claimant's age of 64 years is a moderate impairment to the claimant with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that age alone is not a factor which would prevent the claimant from returning to work. The Staff Hearing Officer further finds that the claimant's high school education, special vocational training, and skilled work history would be assets to the claimant with regard to his ability to return to work. The Staff Hearing Officer further finds that the claimant's skilled work history is evidence that the claimant possesses the intellectual capacity to perform at least unskilled and semi-skilled employment activities in the future. The Staff Hearing Officer further finds that the claimant's academic skills would be assets to the claimant with regard to his ability to learn the new work rules, work skills and work procedures necessary to perform other types of employment. The Staff Hearing Officer further finds, based upon the report of Mr. Finnegan, that there is no basis for a finding that the claimant is not able to benefit from on-the-job training. The Staff Hearing Officer further finds, based upon the report of Mr. Finnegan, that the claimant's work history has provided the claimant with skills that are transferable to the performance of entry level, sedentary and light jobs. The Staff Hearing Officer accepts the residual functional capacities opinions of Dr. Hoover and Dr. Greer and finds that the claimant retains the ability to perform employment activities which are sedentary to light in nature. The Staff Hearing Officer further finds that the claimant is able to perform the following jobs immediately: shuttle fixer; belt repairer; foiling machine adjuster; sewing machine tester; production assembler; and roller coverer. The Staff Hearing Officer therefore finds that the claimant is capable of performing sustained remunerative employment and is not permanently and totally disabled. The claimant's application for permanent and total disability, filed 6-3-99, is therefore denied. *Page 6 
 {¶ 8} 3. Relator filed his second application for PTD compensation on March 1, 2005 after his claim had been allowed for the psychological condition of dysthymic disorder. The SHO determined that relator's allowed psychological condition did not prevent him from engaging in sustained remunerative employment.
 {¶ 9} 4. Relator filed his third application for PTD compensation on April 16, 2007. Relator submitted the March 17, 2007 report of James E. Lundeen, Sr., M.D., in support of his application. After listing the allowed conditions and his physical findings upon examination, Dr. Lundeen concluded that relator was permanently and totally disabled.
 {¶ 10} 5. Relator was examined by Stephen W. Duritsch, M.D., on behalf of the commission. In his August 29, 2007 report, Dr. Duritsch identified the allowed physical conditions, provided his physical findings upon examination, and concluded that relator's allowed physical conditions had reached MMI, assessed a 41 percent whole person impairment, and concluded that relator was capable of light-duty work provided he was not required to use his left hand other than as a functional assist on occasion.
 {¶ 11} 6. Relator was also examined by Donald L. Brown, M.D., a psychiatrist, on behalf of the commission. In his August 31, 2007 report, Dr. Brown opined that relator's impairment for his allowed psychological condition was ten percent or less and that relator did not have any work limitations as a result of his allowed psychological condition.
 {¶ 12} 7. At the request of respondent General Motors Delco Chassis Division ("employer"), relator was examined by Steven S. Wunder, M.D. In his June 12, 2007 report, Dr. Wunder identified the allowed physical conditions, provided his physical findings upon examination, concluded that relator had a 37 percent impairment for his *Page 7 
allowed physical conditions, and that he was capable of performing light-duty employment.
 {¶ 13} 8. The employer also had relator examined by Lee Howard, Ph.D. Dr. Howard examined relator for his allowed psychological condition. In his May 14, 2007 report, Dr. Howard concluded that relator was psychologically able to return to his former position of employment or engage in any other form of sustained remunerative employment for which he was otherwise qualified. Dr. Howard concluded that relator had reached MM I and that further treatment was unnecessary.
 {¶ 14} 9. Relator's third application was heard before an SHO on January 31, 2008. The SHO relied upon the medical reports of Drs. Wunder, Howard, Duritsch and Brown and concluded that relator could perform restricted work at a light-duty work level. Thereafter, the SHO addressed the nonmedical disability factors. The SHO noted that relator was approximately 63 years old when he was injured and that he was currently 73 years old. Comparing this third application with the prior two applications, the SHO determined that there had been essentially no changes in relator's claim except for his age. Citing State ex rel.DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461, and State ex rel.Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, the SHO stated that a mere increase in age, rather than the allowed disability, may not be the sole causative factor to support an award of PTD compensation. Next, the SHO concluded that relator's 12th grade education, his significant Army experience in intelligence, and his ability to presently engage in certain ministerial activities was further evidence that, if so motivated, relator could have participated in further retraining or education to perform light-duty activities. The SHO also noted relator's testimony that he had refused to participate in *Page 8 
any vocational rehabilitation on the grounds that "if he could not return to his regular job duties that he was working in at the time of his injury, then he did not wish to return to any employment." The SHO asked relator about his medical care and treatment since the denial of his most recent application. Relator simply testified that his pain had increased and that he had problems sleeping. Relator was not able to identify any specific further medical care, including physical therapy or medications since the denial of his last application. None of the medical evidence submitted by relator addressed this issue. Thereafter, the commission noted that relator's increase in age, standing alone, could not be considered a bar to his reemployment. Further, the SHO held relator accountable for his failure to participate in any vocational rehabilitation:
 It is further expected of an injured worker under Ohio's Workers' Compensation laws that he participate in a return to work effort to the best of his ability or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse an injured worker's nonpartici-pation in reeducation or retraining efforts, injured workers should not assume that a participatory role or lack thereof will go unscrutinized. State ex rel. Cunningham v. Indus. Comm. (2001), 91 Ohio St.3d 261.
 * * *
 At the time he retired, the injured worker was approximately 63 years old. He is now approximately 73 years old. During that interim 10-year period, the injured worker did not undertake any effort to seek additional employment or to engage in any activities that would permit him to perform any light duty activities within the restrictions identified by Drs. Duritsch and Wunder. The Staff Hearing Officer finds this was a voluntary decision on the part of the injured worker as reflected in his testimony today. As noted above, the injured worker testified that he was not interested in any work but his former position of employment.
 {¶ 15} 10. Thereafter, relator filed the instant mandamus action in this court. *Page 9 
Conclusions of Law: {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. *Page 10 
 {¶ 18} In this mandamus action, relator essentially makes three arguments: (1) the SHO indicated that relator "had not indicated that his condition had worsened [which is] clearly * * * contrary to the record"; (2) because relator clearly has no transferable skills, he is permanently and totally disabled; and (3) the commission's order does not comply with the requirements of Noll. (Relator's brief, at 7.) For the reasons that follow, it is the magistrate's decision that this court should deny relator's request for a writ of mandamus.
 {¶ 19} Relator's first argument is that the commission erred when it determined that relator had not demonstrated a change in his condition when, in fact, he had testified to the contrary. Specifically, relator cites this portion of the transcript in support of his argument:
 MR. MULDOON: Do you want to explain how things have changed in your life, Gene?
 THE CLAIMANT: Well, I have more pain today than I had after — after the time that I spent rehabilitating, things like that. And the sleepless nights, they — they've been pretty prevalent.
(Tr. 22.)
 {¶ 20} In its order, the SHO specifically stated:
 * * * [S]ince the denial of his last Permanent and Total Disability Application on 11/14/2005, there have been essentially no changes in the injured worker's claim, but for his increase in age. The record reflects no additional medical care being sought by or received by the injured worker in this claim.
 {¶ 21} In the statement of facts, it is noted that relator's last surgery occurred in 1998. Further in his testimony, relator indicates that he had increased pain following rehabilitation and yet relator does not indicate when that rehabilitation occurred. *Page 11 
 {¶ 22} The SHO indicated that relator had not presented any evidence explaining what change there had been in relator's circumstances, other than aging, since his last PTD application was denied in November 2005. As indicated previously, the SHO noted that "there have been essentially no changes in the injured worker's claim, but for his increase in age." As the exclusive evaluator of the weight and credibility to be given the evidence, the SHO determined that relator's testimony that his pain had increased was not sufficient to establish a change in circumstances, especially in the absence of additional medical care. The magistrate cannot say that was an abuse of discretion.
 {¶ 23} As noted earlier, this was relator's third application for PTD compensation. There were numerous medical reports in the record indicating that relator was capable of performing work with restrictions at a light-duty level. The medical reports upon which the commission relied constitute some evidence and relator has not demonstrated that the commission abused its discretion in finding that he had not established a change in circumstances other than his increasing age since the denial of his last application. This argument of relator is rejected.
 {¶ 24} In his second argument, relator cites numerous cases from the Supreme Court of Ohio wherein the court chastised the commission for always finding transferable skills in every case. In the present case, the commission did not indicate that relator had any transferable skills. Instead, the commission found that relator's 12th
grade education, his significant Army experience in intelligence, and his ability to engage in ministerial activities is evidence that he could have participated in further retraining or education to perform light-duty activities. Relator simply has not shown that the commission created a "`legal fiction' * * * that * * * Relator can work when the probative evidence * * * clearly *Page 12 
concluded that because of the Relator's advanced age, his limited education in the remote past, and the fact that the Relator clearly has no transferable skills, he is permanently and totally disabled." (Relator's brief, at 8.) This argument of relator is likewise rejected.
 {¶ 25} Lastly, relator contends that the commission's order does not comply with Noll. The magistrate disagrees. After finding that relator was capable of performing light-duty work with restrictions, the commission acknowledged that relator's age was a barrier to his return to the workplace. However, the commission determined that relator's inability to return to work after his injury was a voluntary choice. Specifically, relator chose not to undertake any vocational rehabilitation or retraining which would enable him to return to light-duty work. Relator testified that he was not interested in returning to any work other than his former position of employment. Given his 12th grade education, his Army experience, and his current ability to engage in ministerial activities, the commission specifically determined that had he been so motivated, relator could have participated in further retraining or education to perform light-duty activities. It is undisputed that the commission can demand accountability of claimants who, despite time and medical ability to do so, never tried to further their education or learn new skills.State ex rel. Bowling v. Natl. Can Corp. (1996), 77 Ohio St.3d 148;State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250;State ex rel. Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414; State exrel. Ehlinger v. Indus. Comm. (1996), 76 Ohio St.3d 400; and State exrel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139. In the present case, the commission held relator accountable for his failure to take advantage of his opportunities for rehabilitation and retraining in spite of his ability to do so. This did not constitute an abuse of discretion. *Page 13 
 {¶ 26} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his application for PTD compensation and relator's request for a writ of mandamus should be denied.
 STEPHANIE BISCA BROOKS, MAGISTRATE *Page 1